The People of Puerto Rico, Plaintiff and Appellee, v. Santiago González Castro, Defendant and Appellant.

No. 8647. Argued June 5, 1941.—Decided July 8, 1941.

*Abelardo Casanova Prats* for appellant. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This case is related to that of *People v. Berenguer,* just decided (*ante,* page 79), to that of *People v. Escobar,* 55 P.R.R. 491, and to those of *People v. López de Victoria* and *People v. Segarra*—appeals withdrawn December 1, 1940— in that González Castro was charged jointly with Berenguer, Escobar, López de Victoria, and Segarra, with having committed the same crime; the murder of Luis A. Irizarry, Colonel of the National Guard. Each of the defendants moved for a separate trial and each was tried separately, the judgment appealed from, whereby González Castro was convicted and sentenced to life imprisonment, having been rendered on October 17, 1938.

The transcript of record, a lengthy one, was not filed in the office of the secretary of this court until January 27 of the present year 1941, and although the statutory term for filing a brief had been allowed to expire without filing the same, on March 7 the appeal was set for hearing on the 21st of last April. The appellant failed to appear on that date and the appeal was dismissed on motion of the prosecuting attorney.

At this stage the appellant moved, through his counsel, for the reinstatement of the appeal and on May 6, 1941, this court finally granted the motion allowing him until the 20th for filing his brief and setting the hearing of the appeal for June 5, 1941.

The appellant in his brief refers to that filed in *People v. Berenguer, supra,*—prepared by the same counsel—and

points out that its assignments of error from the second to the sixteenth are not related to the present appeal, but the others are, and that he intends to discuss them incidentally with the four additional ones in which it is charged that the court erred: in overruling his motion for discharge of the jury; in denying his motion for a new trial; and in entering judgment against him. He then argued jointly the first two assignments, relative to the discharge of the jury, but as to the third and fourth assignments, he merely states that their discussion is covered by that of the two previous one. Therefore, a single question is raised, namely, whether or not the jury should have been discharged on the grounds advanced by the defendant.

Let us see what those grounds are. District Attorney Guillermo Pierluisi was testifying as a witness. While he was being examined by the defendant, the following incident occurred, as appears from page 395 *et seq.* of the transcript of the evidence:

"Did you talk to defendant?—I did.—Did you examine him?— I asked him questions.—Did you examine him?—He refused to make any statement.—Did you examine him?—He refused to make any statement.—Did you warn him as to his rights?—It was unnecessary. He did not give me a chance. He was in a waspish attitude. He refused to be examined and then I left him alone.—But you talked to him?—Of course.—And no stenographic notes were taken of what he said?—Yes, Sir.—Who was the stenographer there?—The district attorney's stenographer.—Who?—Font.—Could you refresh your memory with this help?—I could refresh my memory.—Let stenographer Font be called to refresh (his) memory. (Judge:) Do you want to refresh your memory?—(Witness:) Yes, Sir.—Let the stenographer Font come in. (Atty. Toro Nazario:) I think the stenographer Font has not been sworn.—(Witness Pierluisi:) I might also, with my colleague's permission, look up the testimony.—(Atty. Toro Nazario:) Yes, of course.—(Witness Pierluisi:) Here it is.—(Atty. Toro Nazario:)—Is there a stenographic record of what he said?—Yes, Sir. But he did not testify. He refused to testify.—Then, we do not need the stenographer Font. You have a stenographic record of what he said? Why do you say that he refused to testify?—The stenog-

rapher takes down everything. Any chance word uttered by an accused; and he insisted that he did not want to testify, I could not compel him though.—And what did you talk about, if you remember? —I showed him a photo found in Antongiorgi's pocket.—What else? —Just a moment, be patient. This is the photo, and I asked him who were they.—(Dist. Atty. Rodríguez Serra:) Who is photographed there?—He and Antongiorgi arm in arm.—(Atty. Toro Nazario:)— What else did he talk about?—He was, according to the familiar expression, 'como un guabá' (in a rage) and refused to testify.—Be kind enough to consult your notes so as to remember what else he talked about, by refreshing your memory.—There is here a very important item which my colleague, with his great ability, and which we keep for the evidence in rebuttal, when defendant takes the stand, if he does. If counsel so desires, let him ask and I will answer giving him the item for his information.—Just a moment, he has refreshed his memory and is willing to testify after having seen his notes. I respectfully ask the court to make a ruling in this connection. He has already refreshed his memory and he has been long showing hostility.—(Dist. Atty. Pierluisi:) I have been too accommodating with counsel, because an investigation made by a district attorney is of a private nature. I have been too obliging, because I am entitled by law to call attention to the fact that such information is of a private nature, but I am not interested in withholding anything. There are matters that might serve to destroy defendant's alibi and counsel wants to start fishing now in order to prepare then his evidence from the knowledge of what this man might have told the district attorney. The district attorney is willing to read out to counsel the whole testimony, save an important point which bears upon the alibi, and if the attorney became aware of it he might be in a better position to prepare the defendant for the purpose of an alibi. Counsel does not know what this contains. (Judge:) What is the contention of the district attorney?—In that particular we maintain the right to a private investigation, and we warn counsel that the district attorney's preliminary investigations are of a private nature, and the testimony of the defendant has not yet been produced in evidence.—(Atty. Toro Nazario:) Respectfully submitted.—(Judge:) The court, under the law and the jurisprudence of the Supreme Court of Puerto Rico, is of the opinion that a preliminary examination made out by a district attorney is of a private nature, and the district attorney is not bound to disclose his information.

"(Atty. Toro Nazario:) We respectfully take exception, and then, your Honor, we respectfully move that the jury be discharged forthwith, because the district attorney in referring to documents in order to refresh his memory has shown hostility when questions are put to him, and the defendant is compelled to move for the discharge of the jury for a mistrial, inasmuch as he has brought to the attention of the jury facts and circumstances which depend on evidence not yet introduced, and he has prejudiced beforehand the mind and disposition, whether favorable or unfavorable, that the jurors might have. Under such circumstances, and openly infringing the Law of Evidence and the protection to which the defendant is entitled, he has prejudiced the jury as to the nature of his defense to be set up at the proper time by his counsel. (Atty. Toro Nazario argues at length his motion for mistrial.) (Dist. Atty. Pierluisi:) It is counsel's fault, and as an attorney I must suppose that he is competent, otherwise he ought to divest himself of his gown. Counsel ought to know that the statements or date obtained from a preliminary examination by the district attorney are of a private nature and a different interpretation of this is malicious. Otherwise, if not malicious, it shows complete ignorance. (Dist. Atty Pierluisi argues at length his motion in opposition to the motion for mistrial.) (Atty. Toro Nazario:) If the court please, I request that the stenographer take this down so that I can take the proper action.—(Judge:) It is not the rule that arguments should be taken down. When submitting a motion the only thing that is taken down is the statement of the motion.—(Atty. Toro Nazario:) I will pray the court that it be stipulated to the effect that we should trust Your Honor's memory for anything that the district attorney may be bold enough to say, that he has just said.—(Judge:) The district attorney says that he has mentioned such details because counsel for the defendant has led him to do so. That is the situation.—(Atty. Toro Nazario:) Counsel for the defense further says that the district attorney in his statement mentioned that this counsel was conferring with the defendant and specifically stated that he was trying to couple an alibi with the fact that we had those notes, because the defendant did not remember, and that counsel was fishing for evidence.... (Dist. Atty. Pierluisi:) I ask counsel to let me finish. I am justified in supposing that. If counsel so desires, I would make a stipulation; if he so wishes, let this be considered as having been introduced in evidence.—(Atty. Toro Nazario:) Please proceed with your argument. —(Dist. Atty. Pierluisi:) Answer my question. Do you accept this

statement?—(Atty. Toro Nazario:) I can not accept what I have not seen.—(Dist. Atty. Pierluisi:) I insist on my opposition.—(Judge:) Is the argument upon the motion for mistrial closed?—(Dist. Atty. Pierluisi:) If he accepts the whole of the statement.—(Judge:) The motion for mistrial is overruled....

"(Atty. Toro Nazario:) We now respectfully reproduce our motion to declare a mistrial, and allege as a further and special ground the statements....—(Judge:) Is that a motion for reconsideration?—(Atty. Toro Nazario:) For the discharge of the jury, because the district attorney, in some part of his argument, has made statements which tend to discredit this counsel, not only as an attorney in the practice of his profession but also as counsel for this defendant and which also tend to discredit this defendant, on the basis of facts and circumstances which do not appear from the evidence.—(Atty. Toro Nazario argues upon his motion for reconsideration.)—(Dist. Atty. Pierluisi:) What is counsel arguing about? What sort of motion is it?—(Atty. Toro Nazario:) A motion to declare a mistrial.—(Dist. Atty. Pierluisi:) It has already been decided by the court.—(Atty. Toro Nazario:) It is another motion. —(Atty. Toro Nazario proceeds with his argument.)—(Dist. Atty. Pierluisi:) The jury should not be discharged because the attorney fancies that the jurors have heard evidence prejudicial to him or that might be prejudicial to him. The twelve gentlemen of the jury are twelve honest persons who are honestly observing what is taking place here.—(Dist. Atty. Pierluisi continues his argument in opposition.)—(Judge:) Overruled.—(Atty. Toro Nazario:) We take an exception."

The defense then cites the case of *People* v. *Marchand Paz*, 53 P.R.R. 640, 650, 651, and maintains that:

"It is true that in the cited case, the district attorney made the statements in his argument to the jury and that in the instant case the statements were made in the course of the trial and while the district attorney was testifying as a witness for the defendant. But far from such difference abating the error of the court in permitting such statements and in failing to caution the jury so that they should not attach any importance to those statements of the district attorney; far from the error being lessened by the fact that the district attorney made the statements while testifying as a witness, it further aggravates, in our opinion, the situation by further prejudicing the

defendant in the eyes of the jury who were prejudiced beforehand against the only defense to be subsequently set up by the defendant, that is, an alibi, which was the only defense of the defendant, as a mere perusal of the argument of counsel for the defendant and of the evidence introduced is sufficient to realize that the only thing which the defendant tended to prove was that he had not been at the place of the occurrence at the time the shots were fired but in a store near his home, having spent the rest of the morning between his home and the clinic where his mother was confined.

"So that when the defendant presented his evidence of alibi the same had already been discredited in the eyes of the jury by the statements of the district attorney, without the court making the least effort to explain the situation to the jury and to caution them not to attach any credence to the statements of the district attorney, as the same were inadmissible; all this notwithstanding the objections raised by counsel for the defendant, the motions for mistrial, and the exceptions taken not only in regard to the statements tending to discredit the alibi of the defendant but as to the remarks of the district attorney tending to disparage and ridicule counsel for the defendant in the eyes of the jury; and in the face of the tolerant and patient attitude of the court towards the district attorney and even its acquiescence in certain statements of the latter in reference to counsel for the defendant, as when the court said: 'The district attorney says that he has mentioned such details because counsel for defendant has led him to do so. Such are the facts.' "

Before going into the consideration and determination of the errors assigned, it seems advisable to state that the evidence introduced by the prosecution in connection with the part taken by the defendant in the events of July 25, 1938, which resulted in the death of Col. Irizarry, is not only strong, but it also tends to show that it was precisely the defendant who fired the fatal shot.

A consideration of the incident as appears from the record indeed does not create a good impression. The district attorney might have confined himself to the facts when answering and avoid all sorts of commentaries, and the trial would have been conducted on a higher plane. The very be-

havior of the attorney for the defendant from the start of the trial ought to have warned the district attorney that he needed a greater control of himself in order to avoid difficulties and complications. In any event, we fail to see that the incident has given rise to the consequences claimed by the appellant.

The case of *People* v. *Marchand, supra,* cited by him, is an extreme case and quite different from the case at bar. There, referring to the facts and establishing their scope, this court said:

"Antonio Rivera Córdova was called by the defendant for the avowed purpose of obtaining a confession from him as to the killing of Orlando Colón. His testimony, however, was entirely negative in character and its deficiency was not allowed to be cured either by positive testimony nor, indirectly by impeaching witnesses. The supposed confessed killer assumed an air of complete ignorance of the whole situation. The defense expressly asked him whether he had not been to a certain farm early on the morning after the shooting, and there informed Cáceres, Moreau and Marchand (the defendant) that he had killed Colón and 'would pour lead' (*le metía plomo en el cuerpo*) into anyone who talked. The witness denied all.

"Under the above circumstances we must assume that the jury was aware of the proposed defense. The district attorney successfully defeated all attempts to introduce, by other witnesses, evidence of Rivera's intervention in the murder. He could reasonably have rested there and felt confident, in view of the direct evidence against the defendant, that a verdict of guilty would be returned. Nevertheless, not content with his case against the accused, he stated to the jury that the witness had gone to his office after testifying in court, and had told him that the defense had offered him money (some say $30), the amount is not important, to leave the Island so that the defendant could incriminate him. We can not absolve the district attorney of an ulterior motive in saying this to the jury. It may be deduced at once that his main purpose was to show that the accused was trying to fabricate a defense, and what is worse, the district attorney was attempting to accomplish his purpose in a manner which in similar matters we have condemned and are not tolerated by the court. *People* v. *Rojas* and others, *supra.* If one remembers that the same district attorney had objected to any evi-

dence or comment on the matter by the defense, his action seems all the more unjustified. This was not a question of improper evidence admitted because the opposing party had not objected, but was a case of presenting directly to the jury and not during the reception of evidence, damaging testimony which very probably could not have been introduced from the witness stand. The conduct of the district attorney had in total probability already impressed an indelible mark upon the mind of the triers of fact. The statement of the district attorney, if believed by the jury, tended towards an admission of guilt by the defendant and indirectly accused the defense of the serious crime of tampering with a witness. We cannot determine the full effect of such a statement, but it was, it seems to us, inevitably prejudicial.''

In the case at bar, on the contrary, there is nothing to show deliberation on the part of the district attorney. The reference to the evidence of alibi sprang as an incident and in some way was brought about by defendant's attorney himself. Nor can any decisive importance be attached to it. Probably, the jury overlooked the same, as was done by the court which considered the incident as one of the many unnecessary discussions between the attorney for the defendant and the district attorney in the course of the trial.

As was said in the case of *People* v. *Marchand Paz, supra,* the jurisprudence on this matter is copious and each case must rest upon its specific facts. And the facts in the instant case, both as regards the alleged discredit of the evidence of alibi and as regards the alleged disparagement of the attorney, are not of great importance nor do they justify the assertion that they affected or ought to have affected the mind of the jury by disturbing it or influencing it in a certain direction. No prejudicial error is therefore involved, and consequently a reversal of the judgment does not lie.

The appeal must be overruled and the judgment appealed from affirmed.

Mr. Justice Todd, Jr., took no part in the decision of this case.